Exhibit 1

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Attorney's Office for the Western District of North Carolina and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS"); the State of North Carolina, acting through the North Carolina Office of the Attorney General (collectively the "Government"); and Family First Home Health Care, Inc. ("Family First") and Marion James ("James"), and Heather Coleman ("Relator"). All of the above are hereafter collectively referred to as "the Parties" through their authorized representatives.

## RECITALS

A.      Family First, a North Carolina corporation located in Gastonia, NC, provides at-home personal care services to beneficiaries of governmental programs in the Western District of North Carolina. At all relevant times, James was the owner and manager of Family First, and Family First was a North Carolina Medicaid Provider.

B.      On August 20, 2019, Relator filed a *qui tam* action in the United States District Court for the Western District of North Carolina (Docket No. 3:19-CV-405-FDW-DCK), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) and North Carolina False Claims Act, N.C. Gen. Stat. § 1-608(b). The Government partially intervened on September 12, 2022, and filed its Complaint in Intervention on November 14, 2022.

C.      The Government contends that Family First and James submitted or caused to be submitted claims for payment to the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid"), in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729-3733, and the North Carolina False Claims Act, N.C.G.S. §§ 1-605, *et. seq.*

D.      The Government contends that it has certain civil claims against Family First and

James arising from the following conduct from January 1, 2015 through January 9, 2020: Family First and James billed Medicaid for personal care services (a) that were not provided to beneficiaries, (b) were provided by aides to family member beneficiaries, (c) lacked supporting documentation, (d) were purportedly provided by the same aide to two or more different beneficiaries living in different locations at the same times, and (e) were based on incomplete timesheets (*i.e.* unsigned or undated).

The conduct described herein in Paragraph D is referred to below as the "Covered Conduct."

E.     This Settlement Agreement is neither an admission of liability by Family First and James, nor a concession by the Government that its claims are not well founded.

F.     Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

G.     To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>**TERMS AND CONDITIONS**</u>

1.     Family First and James shall pay to the Government the sum of $600,000 ("Settlement Amount"), of which $600,000 is restitution. The Settlement Amount constitutes a debt immediately due and owing in full on the Effective Date of this Agreement. Family First and James are jointly and severally responsible for the Settlement Amount, the Initial Payment, the Second Payment, the Payments over Time, and/or any and all amounts that may be due and owing under this Agreement. Family First and James shall pay said amount(s) by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Western District of North Carolina pursuant to the terms as set forth below.

a.      Within (30) days of the Effective Date of this Agreement, Family First and James shall pay $30,000 via electronic funds transfer to the Government, which amount the Government will credit towards the Settlement Amount ("Initial Payment").

b.      Within six (6) months of the Effective Date of this Agreement, Family First and James shall pay $70,000 via electronic funds transfer to the Government, which amount the Government will credit towards the Settlement Amount ("Second Payment").

c.      Over a period of sixty (60) months ("Payment Period") after the Second Payment, Family First and James will pay via electronic funds transfer the remaining $500,000, plus interest at 4.125% per annum, pursuant to the payment schedule attached as **Exhibit A** (the "Payments Over Time") by 5 p.m. U.S. E.T. on or before each due date. The Settlement Amount may be prepaid, in whole or in part, without penalty or premium.

d.      If, within any year of the five (5) year period commencing on the first day of the month immediately following the Second Payment (each year of which is a "Measurement Period"), Family First's annual gross revenue (including the revenue of any other property, entity, or venture in Family First has an ownership interest) for such Measurement Period exceeds $1,300,000, Family First shall pay the Government an amount equal to two percent (2%) of annual gross revenue above $1,300,000 for such Measurement Period (each a "Revenue Payment"). Within one hundred twenty (120) days of the end of each Measurement Period, Family First shall submit to the United States Attorney's Office for the Western District of North Carolina annual financial statements and any other reasonably requested supporting documentation ("Annual Financials") certified by a Certified Public Accountant. Family First shall pay any owed Revenue Payments to the Government by electronic funds transfer, pursuant to written instructions by the United States, within one hundred fifty (150) days of the end of each Measurement Period. As

used in this Agreement, "gross revenue" is defined as consistent with the Generally Accepted Accounting Principles (GAAP) definition of such term.

2.	The Relator reserves her claim for the payment of expenses, attorneys' fees, and costs for which Defendants may be liable under 31 U.S.C. § 3730(d) and agrees that the Court shall retain jurisdiction with regards to this claim.

3.	Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B), and that the Settlement Amount is also fair, adequate, and reasonable under all the circumstances. In connection with this Agreement and this Civil Action, Relator and her heirs, successors, attorneys, agents, and assigns agree that neither this Agreement, any intervention by the Government in the Civil Action in order to dismiss the Civil Action, nor any dismissal of the Civil Action, shall waive or otherwise affect the ability of the Government to contend that provisions in the False Claims Act, including 31 U.S.C. §§ 3730(d)(3) and 3730(e), or bar Relator from sharing in the proceeds of this Agreement. Moreover, the Government and Relator and her heirs, successors, attorneys, agents, and assigns agree that they each retain all of their rights pursuant to the False Claims Act on the issue of the share percentage, if any, that Relator should receive of any proceeds of the settlement of her claims, and that no agreements concerning Relator's share have been reached to date.

4.	Family First and James have provided sworn financial disclosure statements (Financial Statements) to the United States, and the Government has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. Family First and James each warrant that the Financial Statements are complete, accurate, and current. If the Government learns of asset(s) in which Family First or James had an interest at the time of this Settlement Agreement that were not disclosed in the Financial Statements, or if the Government learns of any

misrepresentation(s) by Family First or James on, or in connection with, the Financial Statements or this Settlement Agreement, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $20,000 or more (excluding valuation disputes regarding assets disclosed in the Financial Statements provided), the Government may at its option: (a) rescind this Settlement Agreement as to Family First and/or James and reinstate its suit based on the Covered Conduct, or (b) let the Settlement Agreement stand and collect on the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of Family First or James previously undisclosed. Family First and James agree not to contest any collection action undertaken by the Government pursuant to this provision, and immediately to pay the Government all reasonable costs incurred in such an action, including attorney's fees and expenses.

5.      In the event that the Government, pursuant to paragraph 4 (concerning disclosure of assets) above, opts to rescind this Agreement, Family First and James agree not to plead, argue, or otherwise raise any defenses under the theories of statutes of limitations, laches, and estoppel, or similar theories, to the allegations in the complaint, except to the extent such defenses were available to them on the Effective Date of this Agreement.

6.      Subject to Paragraph 4 (concerning disclosure of assets) below, the exceptions in Paragraph 8 (concerning excluded claims) below, and subject to Paragraphs 16 and 17 (concerning default and bankruptcy) below, and conditioned upon the full payment of the Settlement Amount, the Government releases Family First and James from any civil or administrative monetary claims the Government has for the Covered Conduct under the Federal False Claims Act, 31 U.S.C. §§ 3729-3733, the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812, the North Carolina False Claims Act, N.C.G.S. § 1-605, *et seq.*, or the common law theories of payment by mistake, unjust enrichment, and fraud.

7. Subject to Paragraph 4 (concerning disclosure of assets) below, the exceptions in Paragraph 8 (concerning excluded claims) below, and subject to Paragraphs 16 and 17 (concerning default and bankruptcy) below, and upon the Government's receipt of the Settlement Amount, Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases Defendants from any civil monetary claim the Relator has on behalf of the Government for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

8. Notwithstanding the releases given in Paragraph 6 of this Agreement, or any other term of this Agreement, the following claims and rights of the Government are specifically reserved and are not released:

      a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

      b.     Any criminal liability;

      c.     Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

      d.     Any liability to the Government (or its agencies) for any conduct other than the Covered Conduct;

      e.     Any liability based upon obligations created by this Agreement;

      f.     Any liability of individuals, except for the liability of Marion James that is released pursuant to this Agreement; and

      g.     Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

9. Family First and James waive and shall not assert any defenses Family First and/or James may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy

Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

10.     Family First and James fully and finally release the Government, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Family First and/or James have asserted, could have asserted, or may assert in the future against the Government, and its agencies, officers, agents, employees, and servants related to the Covered Conduct and the Government's investigation and prosecution thereof.

11.     Family First and James fully and finally release the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Family First and/or James have asserted, could have asserted, or may assert in the future against the Relator, and its agencies, officers, agents, employees, and servants related to the Covered Conduct and the Government's investigation and prosecution thereof.

12.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (*e.g.*, Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, including any Medicaid Program or any Medicaid contractor or intermediary, related to the Covered Conduct; and Family First and James agree not to resubmit to any Medicare contractor or any state payer, including any Medicaid Program or any Medicaid contractor or intermediary, any previously denied claims related to the Covered Conduct, agree not to appeal any such denials of claims, and agree to withdraw any such pending appeals.

13.     Family First and James agree to the following:

a.    Unallowable Costs Defined:    All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Family First and/or James, their present or former officers, directors, employees, shareholders, and agents in connection with:

(1)    the matters covered by this Agreement;

(2)    the Government's audit(s) and civil and criminal investigation(s) of the matters covered by this Agreement;

(3)    Family First and James's investigation, defense, and corrective actions undertaken in response to the Government's audit(s) and civil and criminal investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4)    the negotiation and performance of this Agreement; and

(5)    the payment Family First and James makes to the Government pursuant to this Agreement;

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) ("Unallowable Costs").

b.    Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for by Family First and James, and Family First and James shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request

submitted by Family First and James or any of their subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

      c.    <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Family First and James further agree that within 90 days of the Effective Date of this Agreement they shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Family First and James or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs. Family First and James agree that the Government, at a minimum, shall be entitled to recoup from Family First and James any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

      Any payments due after the adjustments have been made shall be paid to the Government pursuant to the direction of the Department of Justice and/or the affected agencies.  The Government reserves its rights to disagree with any calculations submitted by Family First and/or James or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Family First or James or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

      d.    Nothing in this Agreement shall constitute a waiver of the rights of the Government to audit, examine, or re-examine Family First and James's books and records

to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

14.     Family First and James agree to cooperate fully and truthfully with the Government's investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Family First and James shall encourage, and agree not to impair, the cooperation of their directors, officers, and employees, and shall use their best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Family First and James further agree to furnish to the Government, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that they have undertaken, or that has been performed by another on their behalf.

15.     Family First and James agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors based upon the claims defined as Covered Conduct.

16.     The Settlement Amount represents the amount the Government is willing to accept in compromise of its civil claims arising from the Covered Conduct due solely to Family First and Marion James's financial condition as reflected in the financial disclosures referenced above and the Settlement Amount is to be paid over time as set forth in Paragraph 1, above.

a.     In the event that Family First and James fail to pay the Settlement Amount as provided in the payment schedule set forth in Paragraph 1, above, within five (5) business days of the date upon which such payment is due, Family First and James shall be in Default of their payment obligations ("Default"). The Government will provide a written

Notice of Default, and Family First and James shall have an opportunity to cure such Default within seven (7) calendar days from the date of receipt of the Notice of Default by making the payment due under the payment schedule and paying any additional interest accruing under the Settlement Agreement up to the date of payment. Notice of Default will be delivered to Family First and James through their undersigned counsel, or to such other representative as Family First and James shall designate in advance in writing. If Family First and James fail to cure the Default within seven (7) calendar days of receiving the Notice of Default ("Uncured Default"), and in the absence of an agreement with the Government to a modified payment schedule, the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest shall accrue at the rate of 12% per annum compounded daily from the date of Default on the remaining unpaid total (principal, balance, and interest due).

    b.    In the event of an Uncured Default, the Government may, in its sole discretion: (i) choose to set aside this Agreement and bring an action against Family First and James for the Covered Conduct or for breach of contract; (ii) retain any payments previously made, and (iii) immediately and without further notice take any of the actions set forth in this Paragraph, including but not limited to any and all collection or foreclosure actions described herein and seeking entry of a consent order allowing final judgment in the Settlement Amount, reduced by the amount of any Settlement Payments previously made by Family First and James to the Government under this Agreement, to be entered against Family First and James, such judgment to be subject to interest accruing from the date of entry and at the applicable Treasury post-judgment interest rate, computed daily and compounded annually. Family First and James agree not to contest any action

undertaken by the Government pursuant to this Paragraph, either administratively, or in any state or federal court, except on the grounds of actual payment to the Government.

c.    Family First and James shall provide security as to the entire Settlement Amount by signing, contemporaneously with this Agreement, a Consent Judgment for the amount of $600,000. That signed Consent Judgment is attached hereto as **Exhibit B**, and the Government may file it in a civil action for breach of contract or other claim immediately upon Family First or James's failure to timely pay the Settlement Amount (including timely making each installment payment) as described in Paragraph 1, above.

d.    In addition, Marion James agrees to execute a Deed of Trust listing the United States as trustee on the real property owned by Marion James located at 2912 Berwick Lane, Gastonia, NC 28054 ("Berwick Lane Property"). Said Deed of Trust is attached hereto as **Exhibit C** and is to be executed and notarized by Marion James contemporaneously with this Agreement. Upon Marion James or Family First's Default on any term of this Agreement, the Government will be entitled to pursue any collection remedies allowed by law and this Agreement, including foreclosure of the Berwick Lane Property, for the remaining balance of the Settlement Amount, including all accrued interest. Furthermore, until the Berwick Lane Property is sold, Marion James shall make all mortgage, tax, and other required payments for the property (including bringing the mortgage loan current by paying any and all arrears, accrued interest, costs, and fees), and shall maintain complete homeowner's insurance on the property. Furthermore, Marion James agrees not to take any action that would negatively affect the availability or value of the Berwick Lane Property, including but not limited to pledging, encumbering, damaging, destroying, wasting, or in any way lessening the value of the property. Any action to the

contrary shall constitute a Default under this Agreement, and the Government may pursue any and all remedies permitted by law, as described in Paragraph 11.

e.  In the event of Uncured Default, OIG-HHS may exclude Family First and James from participating in all Federal health care programs until Family First and James pay the Settlement Amount, with interest, as set forth above ("Exclusion for Default"). OIG-HHS will provide written notice of any such exclusion to Family First and James. Family First and James waive any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7) and agree not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion, Family First and James wish to apply for reinstatement, it must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Family First and James will not be reinstated unless and until OIG-HHS approves such request for reinstatement. The option for Exclusion for Default is in addition to, and not in lieu of, the options identified in this Agreement or otherwise available.

g.  In addition to the remedies provided in this Paragraph, if Family First and/or James Defaults on any of their obligations under this Agreement, the Government may take whatever steps it is entitled to take pursuant to law to enforce the obligations of this Agreement, including but not limited to (1) any and all collection action, (2) any breach of contract action, and/or (3) a Civil Action for the Covered Conduct. In the event a civil action for the Covered Conduct is filed, Family First and James agree not to plead, argue, or otherwise raise any defenses under the theories of statutes of limitations, laches, and estoppel, or similar theories, to the allegations in the complaint, except to the extent such defenses were available to them on the Effective Date of this Agreement. Family First and

James shall pay to the Government all reasonable costs of collection and enforcement under this paragraph, including attorneys' fees and expenses.

h.      Furthermore, if Family First and/or James Defaults on any terms under this Agreement, they agree to provide full financial disclosures to the Government. The Government may request, and Family First and James shall provide, any and all documents relating to their financial condition, including but not limited to joint or individual (if filing separately) state and federal tax returns and the tax returns for any businesses that they own, have an interest in, or participate in, including all schedules and attachments; all bank account statements (including copies of deposits and checks), for every bank account to which Family First and James have access or an interest (including but not limited to personal accounts, joint accounts, and business accounts); and an updated financial affidavit for any business that Family First and James own or have an interest in.

i.      If Family first is sold, merged, or transferred, or a majority of the assets of Family First are sold, merged, or transferred into another non-affiliated entity prior to payment of the full settlement amount, Family First and James shall promptly notify the Government, and all remaining payments owed pursuant to the Settlement Agreement shall be accelerated and become immediately due and payable.

17.    In exchange for valuable consideration provided in this Agreement, Family First and James acknowledge the following:

a.      Family First and James have reviewed their financial situation and warrant that they are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the Government of the Settlement Amount.

b.      In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous

exchange for new value given to Family First and James, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

c.      The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

d.      The Parties do not intend to hinder, delay, or defraud any entity to which Family First and/or James was or became indebted to on or after the date of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

e.      If Family First and/or James's obligations under this Agreement are avoided for any reason (including but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid in full, Family First and/or James, or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of Family First and/or James's debts, or to adjudicate Family First and/or James as bankrupt or insolvent; or seeking appointment of a receiver, trustee, custodian, or other similar official for Family First and/or James or for all or any substantial part of Family First and/or James's assets:

(i)      The Government may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Family First and/or James for the claims that would otherwise be covered by the releases provided in Paragraph 6, above;

(ii)      The Government has an undisputed, noncontingent, and liquidated allowed claim against Family First and James in the amount of $2,687,377.50, less any payments received pursuant to this agreement, provided, however, that such

payments are not otherwise avoided and recovered from the Government by Family First and/or James, a receiver, trustee, custodian, or other similar official for Family First and/or James.

(iii.) If any payments are avoided and recovered by a receiver, trustee, creditor, custodian, or similar official, the Government shall not be responsible for the return of any amounts already paid by the Government to the Relator; and

(iv.) If, notwithstanding subparagraph (iii), any amounts already paid by the Government to the Relator pursuant to Paragraph 2 are recovered from the Government in an action or proceeding filed by a receiver, trustee, creditor, custodian, or similar official in or in connection with a bankruptcy case that is filed within two years of the Effective Date of this Agreement or of any payment made under Paragraph 1 of this Agreement, Relator shall, within thirty (30) days of written notice from the Government to the undersigned Relator's counsel, return to the Government all amounts recovered from the Government.

f. Family First and James agree that any civil and/or administrative claim, action, or proceeding brought by the Government under Paragraph 17.e is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the Government's police and regulatory power. Family First and/or James shall not argue or otherwise contend that the Government's claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Family First and James waive and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the Government within 120 days of written notification to Family First and/or

James that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on the Effective Date of this Agreement.

18. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, except as described in Paragraph 2 above.

19. This Agreement is intended to be for the benefit of the Parties.

20. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

21. This Agreement is governed by the laws of the United States. The exclusive venue for any dispute relating to this Agreement is the United States District Court for the Western District of North Carolina. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

22. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties. Forbearance by the Government from pursuing any remedy or relief available to it under this Agreement shall not constitute a waiver of rights under this Agreement.

23. The undersigned counsel represents and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

24. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

25. This Agreement is binding on Family First and/or James's successors, transferees, heirs, and assigns (including but not limited to Gaston Piedmont Health Care Inc.).

26.     All Parties consent to the Government's disclosure of this Agreement, and information about this Agreement, to the public.

27.     If any term or provision of this Agreement is determined to be invalid, illegal, or unenforceable, such term or provision will be excluded and stricken from this Agreement to the extent of such invalidity, illegality, or unenforceability; all other terms and provisions herein shall remain in full force and effect.

28.     Upon receipt of the Initial Payment, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

29.     This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date"). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

✱ ✱ ✱

(signatures on following pages)

# UNITED STATES OF AMERICA

DENA J. KING
United States Attorney for the
Western District of North Carolina

**JOHN JOHNSON** Digitally signed by JOHN JOHNSON Date: 2024.03.12 15:43:19 -04'00'

Dated: _____

BY:     J. SETH JOHNSON
Assistant United States Attorney

**SUSAN GILLIN** Digitally signed by SUSAN GILLIN Date: 2024.02.23 15:15:21 -05'00'

Dated: _____

BY:     SUSAN E. GILLIN
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
United States Department of Health and Human Services

# STATE OF NORTH CAROLINA

Dated: _____

BY:     F. EDWARD KIRBY, JR.
Director, Medicaid Investigations Division
North Carolina Department of Justice

# NC DEPARTMENT OF HEALTH & HUMAN SERVICES, DIVISION OF HEALTH BENEFITS

Dated: _____

BY:     JAY LUDLAM
Deputy Secretary, NC Medicaid
NC Department of Health & Human Services, Division of Health Benefits

# UNITED STATES OF AMERICA

DENA J. KING
United States Attorney for the
Western District of North Carolina

Dated: _____

BY:    J. SETH JOHNSON
        Assistant United States Attorney

Dated: _____

BY:    SUSAN E. GILLIN
        Assistant Inspector General for Legal Affairs
        Office of Counsel to the Inspector General
        United States Department of Health and Human Services

# STATE OF NORTH CAROLINA

Dated:   2/29/2024

BY:    F. EDWARD KIRBY, JR.
        Director, Medicaid Investigations Division
        North Carolina Department of Justice

# NC DEPARTMENT OF HEALTH & HUMAN SERVICES, DIVISION OF HEALTH BENEFITS

Dated:   03/01/24 | 11:44 AM EST

BY:    JAY LUDLAM
        Deputy Secretary, NC Medicaid
        NC Department of Health & Human Services, Division of Health Benefits

**MARION JAMES**

_Marion James_
MARION JAMES                       Dated: _2/16/2024_

_Mark L. Jones_
MARK JONES                       Dated: _2/16/2024_
Counsel for Marion James


**FAMILY FIRST HOME HEALTH CARE, INC**

_Marion James_
MARION JAMES                       Dated: _2/16/2024_
Owner/authorized agent

_Mark L. Jones_
MARK JONES                       Dated: _2/16/2024_
Counsel for Family First Home Health Care, Inc

**RELATOR**

Heather Coleman (Mar 11, 2024 17:01 EDT)

HEATHER COLEMAN

Dated: Mar 11, 2024

W. STACY MILLER II
Counsel for Relator

Dated: 3-11-24

21

# EXHIBIT A

Family First and James Installment Payment Schedule

| INSTALLMENT PAYMENT # | PAYMENT AMOUNT ($) | CALCULATED INTEREST 4.125% | PRINCIPAL ($) | OUTSTANDING BALANCE ($) |
|---|---|---|---|---|
| | | | | $ 500,000.00 |
| One - 6 months after second payment | 35,171.23 | 10,171.23 | 25,000.00 | 475,000.00 |
| Two - 9 months after second payment | 29,831.34 | 4,831.34 | 25,000.00 | 450,000.00 |
| Three - 12 months after second payment | 29,577.05 | 4,577.05 | 25,000.00 | 425,000.00 |
| Four - 15 months after second payment | 29,322.77 | 4,322.77 | 25,000.00 | 400,000.00 |
| Five - 18 months after second payment | 29,068.49 | 4,068.49 | 25,000.00 | 375,000.00 |
| Six - 21 months after second payment | 28,814.21 | 3,814.21 | 25,000.00 | 350,000.00 |
| Seven - 24 months after second payment | 28,559.93 | 3,559.93 | 25,000.00 | 325,000.00 |
| Eight -27 months after second payment | 28,305.65 | 3,305.65 | 25,000.00 | 300,000.00 |
| Nine - 30 months after second payment | 28,051.37 | 3,051.37 | 25,000.00 | 275,000.00 |
| Ten - 33 months after second payment | 27,797.09 | 2,797.09 | 25,000.00 | 250,000.00 |

| INSTALLMENT PAYMENT # | PAYMENT AMOUNT ($) | CALCULATED INTEREST 4.125% | PRINCIPAL ($) | OUTSTANDING BALANCE ($) |
|---|---|---|---|---|
| Eleven - 36 months after second payment | 27,542.81 | 2,542.81 | 25,000.00 | 225,000.00 |
| Twelve - 39 months after second payment | 27,288.53 | 2,288.53 | 25,000.00 | 200,000.00 |
| Thirteen - 42 months after second payment | 27,034.25 | 2,034.25 | 25,000.00 | 175,000.00 |
| Fourteen - 45 months after second payment | 26,779.97 | 1,779.97 | 25,000.00 | 150,000.00 |
| Fifteen - 48 months after second payment | 26,525.68 | 1,525.68 | 25,000.00 | 125,000.00 |
| Sixteen - 51 months after second payment | 26,271.40 | 1,271.40 | 25,000.00 | 100,000.00 |
| Seventeen - 54 months after second payment | 26,017.12 | 1,017.12 | 25,000.00 | 75,000.00 |
| Eighteen - 57 months after second payment | 25,762.84 | 762.84 | 25,000.00 | 50,000.00 |
| Nineteen - 60 months after second payment | 25,508.56 | 508.56 | 25,000.00 | 25,000.00 |
| Twenty - 63 months after second payment | 25,254.28 | 254.28 | 25,000.00 | - |
| TOTAL | $ 558,484.59 | $ 58,484.59 | $ 500,000.00 | |

# Exhibit B

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE of NORTH CAROLINA, | |
| Plaintiffs, | CONSENT ORDER FOR ENTRY OF JUDGMENT |
| v. | |
| FAMILY FIRST HOME HEALTH CARE, INC. and MARION JAMES, Defendants. | |

The undersigned parties agree to the terms of this Consent Order which is entered into in partial consideration for the Settlement Agreement between the parties (the Settlement Agreement"), to which this Consent Judgement is attached as Exhibit B.

**WHEREAS**, the Settlement Agreement provides that Defendants Family First Home Health Care, Inc. and Marion James are required to pay Six Hundred Thousand Dollars ($600,000) (the "Settlement Amount") up through the date of entry of this judgment, plus court costs, and all future cost to Plaintiffs in installments as set forth therein. Under the terms set forth in the Settlement Agreement this Order shall bear interest after entry at the rate of 12% per annum compounded daily from the unpaid total (principal, date of default on the remaining balance due). Plaintiffs may immediately take any and all collection action authorized by law, including but not limited to immediately applying for writs of garnishment and/or execution, and/or applying offsets (including offsets of tax refunds), to satisfy Defendants' outstanding debt; and

**WHEREAS**, upon a default in payment by Defendants Family First Home Health Care, Inc. and Marion James, Plaintiffs are entitled to file this Consent Order for Entry of Judgment to recover any unpaid portion of the Settlement Amount;

**IT IS HEREBY ORDERED** that the clerk shall enter a judgment against Defendants Family First Home Health Care, Inc. and Marion James, jointly and severally, in the following amount:

1. _____, which is the Settlement Amount less the sum of the amounts paid under the Settlement Agreement, if any, by Defendants Family First Home Health Care, Inc. and Marion James, to satisfy Defendants' obligations under the Settlement Agreement.

   **SO ORDERED** this the ____ day of _____, 20____.

   _____
   United States District Judge

I have received a copy of the Settlement Agreement, I accept service of the Settlement Agreement, and I consent to the entry of the Consent Order based on the contents of the previously agreed and executed Settlement Agreement:

## UNITED STATES OF AMERICA

DENA J. KING
United States Attorney for the
Western District of North Carolina

JOHN JOHNSON
Digitally signed by JOHN JOHNSON
Date: 2024.03.12 15:40:28 -04'00'

Dated: _____

BY:    J. SETH JOHNSON
Assistant United States Attorney

## STATE OF NORTH CAROLINA

JOSHUA H. STEIN
North Carolina Attorney General

Dated: 3/12/24

BY:    LAREENA J. PHILLIPS
Special Deputy Assistant Attorney General
Medicaid Investigations Division

3

**MARION JAMES**

_Marion James_          Dated: 2/16/2024
MARION JAMES

_Mark L. Jones_          Dated: 2/16/2024
MARK JONES
Counsel for Marion James

**FAMILY FIRST HOME HEALTH CARE, INC**

_Marion James_          Dated: 2/16/2024
MARION JAMES
Owner/authorized agent

_Mark L. Jones_          Dated: 2/16/2024
MARK JONES
Counsel for Family First Home Health Care, Inc

4

Exhibit C

# NORTH CAROLINA DEED OF TRUST

SATISFACTION:  The debt secured by the within Deed of Trust
together with the Debt(s) secured thereby has been satisfied in full.
This the _____ day of _____, 20___
Signed:_____

_____

_____

**Parcel Identifier No.140850**
**Verified by _____ County on the ___ day of _____, 20__**
By:_____

Mail/Box to: U.S. Attorney's Office, 227 West Trade Street, Suite 1650

This instrument was prepared by: Seth Johnson, Assistant United States Attorney

Brief description for the Index:  2912 Berwick Lane, Gastonia NC 28054

THIS DEED of TRUST made this _____ day of _____, 20____, by and between:

| GRANTOR | TRUSTEE | BENEFICIARY |
|---|---|---|
| **Marion Kendrick James** | **SETH JOHNSON,**<br>**Assistant United States Attorney** | **UNITED STATES OF AMERICA,**<br>**By and through the United States Attorney for the Western District of North Carolina**<br><br>**STATE OF NORTH CAROLINA,**<br>**By and through the North Carolina Attorney General** |

Enter in appropriate block for each party: name, address, and, if appropriate, character of entity, e.g. corporation or partnership.

The designation Grantor, Trustee, and Beneficiary as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, that whereas the Grantor is indebted to the Beneficiary in the principal sum of six hundred thousand dollars ($600,000), as evidenced by the Settlement Agreement of even date herewith and to which this Deed of Trust is attached as Exhibit C. The terms of that Settlement Agreement are incorporated herein by reference.  The final due date for payments of said Settlement Agreement, if not sooner paid, is _____, 20__ .

NOW, THEREFORE, as security for said indebtedness, advancements and other sums expended by Beneficiary pursuant to this Deed of Trust and costs of collection (including attorneys' fees as provided in the Settlement Agreement and this Deed of Trust) and other valuable consideration, the receipt of which is hereby acknowledged, the Grantor has bargained, sold, given and conveyed and does by these presents bargain, sell, give, grant and convey to said Trustee, his heirs, or successors, and assigns, all of that certain lot, parcel of land or condominium unit situated at 2912 Berwick Lane, Gastonia, North Carolina 28054 (the "Premises") and more particularly described as follows:

BEING the full contents of Lot 10, Section 3, of Glenmoor Subdivision, as shown upon plat thereof recorded in Plat Book 45 of Page 100 in the office of the Register of Deeds for Gaston County, North Carolina.

TO HAVE AND TO HOLD said Premises with all privileges and appurtenances thereunto belonging, to said Trustee, his heirs, successors, and assigns forever, upon the trusts, terms and conditions, and for the uses hereinafter set forth.

If the Grantor shall pay the debt secured hereby in accordance with the terms of the Settlement Agreement, together with any interest due thereon, any renewals or extensions thereof in whole or in part, and all other sums secured hereby and shall comply with all of the covenants, terms and conditions of this Deed of Trust, then this conveyance shall be null and void and may be canceled of record at the request and the expense of the Grantor.

If, however, there shall be any default (a) in the payment of any sums due under the Settlement Agreement and this Deed of Trust or any other instrument securing the debt set forth in the Settlement Agreement and such default is not cured within seven (7) days from receipt of written Notice of Default, or (b) if there shall be default in any of the other covenants, terms or conditions of the Settlement Agreement secured hereby, or any failure or neglect to comply with the covenants, terms or conditions contained in this Deed of Trust or any other instrument securing the debt set forth in the Settlement Agreement and such default is not cured within seven (7) days after written notice, then and in any of such events, without further notice, it shall be lawful for and the duty of the Trustee, upon request of the Beneficiary, to sell the land herein conveyed at public auction for cash, after having first giving such notice of hearing as to commencement of foreclosure proceedings and obtained such findings or leave of court as may then be required by law and giving such notice and advertising the time and place of such sale in such manner as may then be provided by law, and upon such and any resales and upon compliance with the law then relating to foreclosure proceedings under power of sale to convey title to the purchaser in as full and ample manner as the Trustee is empowered. The Trustee shall be authorized to retain an attorney to represent him in such proceedings. The Trustee, at the sole discretion and request of the Beneficiary, may move the appropriate court to modify the terms of sale set forth above, so long as any sale of the Premises is conducted in a commercially reasonable manner.

The proceeds of the Sale shall after the Trustee retains his commission, together with reasonable attorneys' fees incurred by the Trustee in such proceedings, be applied to the costs of sale, including, but not limited to, costs of collection, taxes, assessments, costs of recording, service fees and incidental expenditures, the amount due on debt set forth in the Settlement Agreement hereby secured and advancements and other sums expended by the Beneficiary according to the provisions hereof and otherwise as required by the then existing law relating to foreclosures. The Trustee's commission shall be five percent (5%) of the gross proceeds of the sale or the minimum sum of **$1.00** whichever is greater, for a completed foreclosure. In the event foreclosure is commenced, but not completed, the Grantor shall pay all expenses incurred by Trustee, including reasonable attorneys fees, and a partial commission computed on five per cent (5%) of the outstanding indebtedness or the above stated minimum sum, whichever is greater, in accordance with the following schedule, to-wit: one-fourth (¼) thereof before the Trustee issues a notice of hearing on the right to foreclosure; one-half (½) thereof after issuance of said notice, three-fourths (¾) thereof after such hearing; and the greater of the full commission or minimum sum after the initial sale.

And the said Grantor does hereby covenant and agree with the Trustee as follows:

1. INSURANCE. Grantor shall keep all improvements on said land, now or hereafter erected, constantly insured for the benefit of the Beneficiary against loss by fire, windstorm and such other casualties and contingencies, in such manner and in such companies and for such amounts, not less than that amount necessary to pay the sum secured by this Deed of Trust, and as may be satisfactory to the Beneficiary. Grantor shall purchase such insurance, pay all premiums therefor, and shall deliver to Beneficiary such policies along with evidence of premium payments as long as the debt forth in the Settlement Agreement secured hereby remains unpaid. If Grantor fails to purchase such insurance, pay premiums therefor or deliver said policies along with evidence of payment of premiums thereon, then Beneficiary, at his option, may purchase such insurance. Such amounts paid by Beneficiary shall be added to the principal of the debt set forth in the Settlement Agreement secured by this Deed of Trust, and shall be due and payable upon demand of Beneficiary. All proceeds from any insurance so maintained shall at the option of Beneficiary be applied to the debt secured hereby and if payable in installments, applied in the inverse order of maturity of such installments or to the repair or reconstruction of any improvements located upon the Property.

2. TAXES, ASSESSMENTS, CHARGES. Grantor shall pay all taxes, assessments and charges as may be lawfully levied against said Premises within thirty (30) days after the same shall become due. In the event that Grantor fails to so pay all taxes, assessments and charges as herein required, then Beneficiary, at his option, may pay the same and the amounts so paid shall be added to the principal of the debt set forth in the Settlement Agreement secured by this Deed of Trust, and shall be due and payable upon demand of Beneficiary.

3. ASSIGNMENTS OF RENTS AND PROFITS. Grantor assigns to Beneficiary, in the event of default, all rents and profits from the land and any improvements thereon, and authorizes Beneficiary to enter upon and take possession of such land and improvements, to rent same, at any reasonable rate of rent determined by Beneficiary, and after deducting from any such rents the cost of reletting and collection, to apply the remainder to the debt secured hereby.

4. PARTIAL RELEASE. Grantor shall not be entitled to the partial release of any of the above described property unless a specific provision providing therefor is included in this Deed of Trust. In the event a partial release provision is included in this Deed of Trust, Grantor must strictly comply with the terms thereof. Notwithstanding anything herein contained, Grantor shall not be entitled to any release of property unless Grantor is not in default and is in full compliance with all of the terms and provisions of the Settlement Agreement, this Deed of Trust, and any other instrument that may be securing said debt set forth in the Settlement Agreement.

5. WASTE. The Grantor covenants that he will keep the Premises herein conveyed in as good order, repair and condition as they are now, reasonable wear and tear excepted, and will comply with all governmental requirements respecting the Premises or their use, and that he will not commit or permit any waste.

6. CONDEMNATION. In the event that any or all of the Premises shall be condemned and taken under the power of eminent domain, Grantor shall give immediate written notice to Beneficiary and Beneficiary shall have the right to receive and collect all damages awarded by reason of such taking, and the right to such damages hereby is assigned to Beneficiary who shall have the discretion to apply the amount so received, or any part thereof, to the indebtedness due hereunder and if payable in installments, applied in the inverse order of maturity of such installments, or to any alteration, repair or restoration of the Premises by Grantor.

7. WARRANTIES. Grantor covenants with Trustee and Beneficiary that he is seized of the Premises in fee simple, has the right to convey the same in fee simple, that title is marketable and free and clear of all encumbrances, and that he will warrant and defend the title against the lawful claims of all persons whomsoever, except for the exceptions hereinafter stated.

8. SUBSTITUTION OF TRUSTEE. Grantor and Trustee covenant and agree to and with Beneficiary that in case the said Trustee, or any successor trustee, shall die, become incapable of acting, renounce his trust, or for any reason the holder of the Settlement Agreement desires to replace said Trustee, then the holder may appoint, in writing, a trustee to take the place of the Trustee; and upon the probate and registration of the same, the trustee thus appointed shall succeed to all rights, powers and duties of the Trustee.

| X | **THE FOLLOWING PARAGRAPH, 9. SALE OF PREMISES, SHALL NOT APPLY UNLESS THE BLOCK TO THE LEFT MARGIN OF THIS SENTENCE IS MARKED AND/OR INITIALED.** |

9. SALE OF PREMISES. Grantor agrees that if the Premises or any part thereof or interest therein is sold, assigned, transferred, conveyed or otherwise alienated by Grantor, whether voluntarily or involuntarily or by operation of law [other than: (i) the creation of a lien or other encumbrance subordinate to this Deed of Trust which does not relate to a transfer of rights of occupancy in the Premises; (ii) the creation of a purchase money security interest for household appliances; (iii) a transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety; (iv) the grant of a leasehold interest of three (3) years or less not containing an option to purchase; (v) a transfer to a relative resulting from the death of a Grantor; (vi) a transfer where the spouse or children of the Grantor become the owner of the Premises; (vii) a transfer resulting from a decree of a dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the Grantor becomes an owner of the Premises; (viii) a transfer into an inter vivos trust in which the Grantor is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the Premises], without the prior written consent of Beneficiary, Beneficiary, at its own option, may declare the debt set forth in the Settlement Agreement secured hereby and all other obligations hereunder to be forthwith due and payable. Any change in the legal or equitable title of the Premises or in the beneficial ownership of the Premises, including the sale, conveyance or disposition of a majority interest in the Grantor if a corporation or partnership, whether or not of record and whether or not for consideration, shall be deemed to be the transfer of an interest in the Premises.

10. ADVANCEMENTS. If Grantor shall fail to perform any of the covenants or obligations contained herein or in any other instrument given as additional security for the debt set forth in the Settlement Agreement secured hereby, the Beneficiary may, but without obligation, make advances to perform such covenants or obligations, and all such sums so advanced shall be added to the principal sum, shall bear interest at the rate provided in the Settlement Agreement secured hereby for sums due after default and shall be due from Grantor on demand of the Beneficiary. No advancement or anything contained in this paragraph shall constitute a waiver by Beneficiary or prevent such failure to perform from constituting an event of default.

11. INDEMNITY. If any suit or proceeding be brought against the Trustee or Beneficiary or if any suit or proceeding be brought which may affect the value or title of the Premises, Grantor shall defend, indemnify and hold harmless and on demand reimburse Trustee or Beneficiary from any loss, cost, damage or expense and any sums expended by Trustee or Beneficiary shall bear interest as provided in the Settlement Agreement secured hereby for sums due after default and shall be due and payable on demand.

12. WAIVERS. Grantor waives all rights to require marshaling of assets by the Trustee or Beneficiary. No delay or omission of the Trustee or Beneficiary in the exercise of any right, power or remedy arising under the Settlement Agreement or this Deed of Trust shall be deemed a waiver of any default or acquiescence therein or shall impair or waive the exercise of such right, power or remedy by Trustee or Beneficiary at any other time.

13. CIVIL ACTION. In the event that the Trustee is named as a party to any civil action as Trustee in this Deed of Trust, the Trustee shall be entitled to employ an attorney at law, including himself if he is a licensed attorney, to represent him in said action and the reasonable attorney's fee of the Trustee in such action shall be paid by the Beneficiary and added to the principal of the Settlement Agreement secured by this Deed of Trust and bear interest at the rate provided in the Settlement Agreement for sums due after default.

14. PRIOR LIENS. Default under the terms of any instrument secured by a lien to which this Deed of Trust is subordinate shall constitute default hereunder.

15. OTHER TERMS. All terms and conditions of the Settlement Agreement executed contemporaneously with this Deed of Trust.

IN WITNESS WHEREOF, the Grantor has duly executed the foregoing as of the day and year first above written.

By: _Marion Kendrick James_ (SEAL)     _2/16/2024_ (DATE)
MARION KENDRICK JAMES

State of North Carolina - County of _Gaston_

I, the undersigned Notary Public of the County and State aforesaid, certify that _Marion Kendrick James_ personally appeared before me this day and acknowledged the due execution of the foregoing instrument for the purposes therein expressed. Witness my hand and Notarial stamp or seal this _16_ day of _February_, 20_24_

My Commission Expires: _May 4, 2027_

Brittney N. York
NOTARY PUBLIC
Cleveland County, NC
My Commission Expires May 04, 2027

Notary Public

State of North Carolina - County of _____

I, the undersigned Notary Public of the County and State aforesaid, certify that _____ personally appeared before me this day and acknowledged the due execution of the foregoing instrument for the purposes therein expressed. Witness my hand and Notarial stamp or seal this _____ day of _____, 20__.

My Commission Expires: _____

_____
Notary Public

State of North Carolina - County of _____

I, the undersigned Notary Public of the County and State aforesaid, certify that _____ personally came before me this day and acknowledged that __he is the _____ of _____, a North Carolina or _____ corporation/limited liability company/general partnership/limited partnership (strike through the inapplicable), and that by authority duly given and as the act of such entity, __he signed the foregoing instrument in its name on its behalf as its act and deed. Witness my hand and Notarial stamp or seal, this _____ day of _____, 20__.

My Commission Expires: _____

_____
Notary Public